**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **No. 20 C 6414** |
| **v.** | ) | |
| | ) | **Judge Rebecca R. Pallmeyer** |
| **MARIO HERNANDEZ** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Mario Hernandez pleaded guilty to a RICO conspiracy and to being a felon in possession of a firearm; this court sentenced him to 230 months in custody. Hernandez now files a motion under 28 U.S.C. § 2255 [1], arguing that he received ineffective assistance of counsel and that his sentence was based on prior convictions that have since been ruled unconstitutional. For the reasons discussed below, that motion is denied, and the court declines to grant a Certificate of Appealability.

<u>**BACKGROUND**</u>

Hernandez was a member of the Maywood Latin Kings street gang from about 1999 through July 2016. (Presentence Investigation Report (hereinafter "PSR") [678][1] ¶ 9.) For several of those years, Hernandez held the role of Chief Enforcer. (*Id.*) In that role, Hernandez ordered members of the gang to shoot and beat rival gang members and former Latin King members (known as "runaways"). (*Id.* ¶¶ 10, 12.) Hernandez also conducted the sale of a Smith & Wesson AR-15 rifle to a cooperating source. (*Id.* ¶¶ 18-19.)

On July 21, 2016, Hernandez was charged by indictment with a RICO conspiracy, in violation of 18 U.S.C. § 1962(d) (Count One), and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) (Count Fifteen). (Indictment [4].) On July 17, 2017, Hernandez

---

[1]     Hernandez's § 2255 Motion [1], Memorandum in Support [3], and Reply [11], are found in the civil docket for this case: 1:20-cv-06414. All other record citations are to the criminal docket: 1:16-cr-00462.

pleaded guilty to both counts. (Plea Decl. [338].) With respect to the RICO conspiracy, Hernandez admitted

> that he knowingly conspired to conduct and participate in the conduct of the affairs of the Latin Kings through a pattern of racketeering activity, which included threats, intimidation, and violence, which included assaults with dangerous weapons against others, multiple acts of extortion as defined under 18 U.S.C. § 1961, and other acts of violence such as "violations."

*Id.* With respect to being a felon in possession, Hernandez admitted that

> On or about April 15, 2014, [he] knowingly possessed the firearm . . . and caused it to be sold to a member of the Latin Kings who, unbeknownst to [him], was cooperating with law enforcement, in exchange for $1000. [He] acknowledges that the firearm traveled in interstate commerce prior to [his] possession of the gun. Further, prior to his knowing possession of the above-described firearm, [he] had been convicted of a felony offense punishable by a term of imprisonment exceeding one year.

*Id.*

On August 31, 2017, Hernandez submitted a letter to the court in which he stated he did "not want to plead guilty to possession of a firearm." (Aug. 31, 2017 Letter [361].) On September 12, 2017, the court held a status hearing, during which Hernandez stated he "had nothing to do with this gun." (Tr. of Sept. 12, 2017 Hr'g [548] at 3:6-7.) The Government pointed out that this statement was inconsistent with the August 31 letter to the court, in which Hernandez wrote: "Did I try and sell the gun? Yes." (*Id.* at 5:8-9.) After the court noted the contradiction, Hernandez acknowledged that he did try to sell the gun, and the court clarified for Hernandez that his plea of felon in possession "does not require that [Hernandez] had the gun in [his] hand." (*Id.* at 6:25-7:2, 7:5-7.) Hernandez nevertheless continued to assert his earlier plea of guilty to the felon-in-possession charge was incorrect. As a result, his attorney moved for leave to withdraw, and the court granted that request. (Withdraw of Counsel [369].) After consulting with new counsel, Hernandez entered a plea addendum, which added the following language: "At the time that the defendant constructively possessed the [rifle], he knew that he was a felon and that he previously had been convicted of a crime punishable by a term of imprisonment in excess of one year." (Plea Addendum [798] at 1.)

2

The Second Supplemental Presentence Investigation Report of September 6, 2019 noted that the base offense level for RICO offenses is the greater of 19 or the offense level for the underlying offense. (Second Suppl. Presentence Investigation Report [733] ¶ 5.) Racketeering Act 1—Hernandez's highest offense level—included the offense of "conspiracy to commit murder," which has a base level of 33. (*Id.* ¶ 7.) With respect to the felon in possession count, which has a base level of 22, the report recommended a two-point enhancement for obstruction of justice. (*Id.* ¶¶ 20, 24.) The report also concluded Hernandez had not earned the three-point reduction for acceptance of responsibility. (*Id.* ¶ 31.) Those five points—two points added on the weapons count, three not subtracted on the RICO count—were the result of the conflicting statements Hernandez made during the September 12 change of plea hearing. (*Id.* ¶ 24.)

On November 19, 2019, Hernandez submitted objections to the report. Hernandez noted that the two-point enhancement on the weapons count did not affect the adjusted offense level on the conspiracy count. (Def.'s Sentencing Mem. [788] at 2.) Hernandez "agreed that the base offense level for participation in the Latin King conspiracy is 33" and dd not challenge the addition of three points for his role as a manager or supervisor of the criminal conduct. (*Id.*) But Hernandez "disagree[d] with an adjustment for obstruction of justice" and "maintain[ed] three points should be deducted for acceptance of responsibility." At sentencing, this court agreed with Hernandez and awarded him the three-point deduction. With his adjusted offense level of 33 (base level 33, plus 3 points for role in the offense and minus 3 points for acceptance of responsibility) and criminal history category V, Hernandez's guideline range was 210-262 months. The court imposed a sentence of 230 months in custody followed by supervised release. (Sentencing Order [800].)

Hernandez did not appeal his conviction or sentence. On October 28, 2020, he filed a motion under 28 U.S.C. § 2255, claiming (1) his counsel at sentencing was ineffective by failing to contest the base offense level of 33 for his RICO offense, (2) his counsel at the plea stage was ineffective by failing to give proper advice regarding the elements of the felon in possession

offense, and (3) the court improperly counted an aggravated unlawful use of a weapon (AUUW) conviction when calculating his criminal history score. (Mot. to Vacate, Set Aside, or Correct Sentence (hereinafter "Mot.") [1] at 2-7.)

## DISCUSSION

"[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Relief is available under limited circumstances, including when the sentence was imposed in violation of the Constitution or laws of the United States, the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a).

To prevail on a claim of ineffective assistance of counsel, Hernandez must satisfy the two-part test first articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). First, Hernandez "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The court is directed to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Second, Hernandez "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* ¶

I.    **Ineffective Assistance of Counsel: Agreeing to a Base Offense Level of 33**

Hernandez argues that his counsel was ineffective when he "did not object" to the "base level 33 to Count One of the RICO charge," which Hernandez believes "was without merit." (Mem. in Supp. [3] at 4.) Specifically, Hernandez argues "there is no proof that [he] participated in [conspiracy to commit murder], either personally or as a leader in the RICO conspiracy." (*Id.*) Hernandez argues the proper base level was 27, which the court used in sentencing co-defendant Eduardo Hernandez ("Eduardo") about one month earlier. (*Id.* at 2.)

4

To begin, the court reiterates that the cause of action here is ineffective assistance of counsel, which requires that Hernandez show not only that the conduct of his counsel caused him prejudice, but also that counsel's conduct was objectively unreasonable. In light of the evidence considered by counsel at the time of sentencing, the court cannot find that the decision to accept a base level of 33 was unreasonable. Hernandez admitted in his sworn plea declaration that he "knowingly conspired to conduct and participate in the conduct of the affairs of the Latin Kings." (Plea Decl. at 3.) That conduct included "acts of violence, including murder." (PSR ¶ 3.) And the Government points to significant evidence—of which Hernandez's counsel was aware at the time of sentencing—that Hernandez instructed gang members to shoot rival gang members. (*See* Govt. Resp. [7] at 16-20.)

Hernandez does not argue that lethal violence was not foreseeable conduct of the Latin Kings, nor does he argue that it did not further the purpose of the Latin Kings. He could not do so; the gang's written "manifesto" instructs members to engage in "security," which in the gang's parlance means using firearms to shoot at rival gang members that enter Latin King territory. (PSR ¶ 10.) Hernandez instead argues that while he "may have known what some people were up to," he did not "physically participate in the act." (Mem. in Supp. at 4.) But physical participation is not a necessary element of conspiracy to commit murder. Rather, a defendant "is criminally liable for the reasonably foreseeable acts committed by his co-conspirators in furtherance of that conspiracy." *United States v. Curtis*, 324 F.3d 501, 506 (7th Cir. 2003); *see Pinkerton v. United States*, 328 U.S. 640, 647-48 (1946). The Seventh Circuit has affirmed attributing a gang-related murder, within a RICO conspiracy, to a defendant in a leadership position of the Latin Kings who did not physically participate in the murder.[2] *United States v. Garcia*, 754 F.3d 460, 487-88 (7th

---

[2]     Not only is this outcome consistent with the law of conspiracy, but it also avoids the perverse outcome of a gang leader's avoiding responsibility for the acts of a gang member lower in the gang's hierarchy, when that act was committed on behalf of, and subject to the enforcement of, the gang's leadership.

Cir. 2014). The court presumes Hernandez's experienced defense attorney was aware of this caselaw and thus reasonably declined to contest the base level of 33.

Hernandez cannot show prejudice, either. His citations to other sentences, imposed by other judges in other cases, do not alter this court's finding that Hernandez's conduct was sufficient to support the charge of conspiracy to commit murder. (*See* Mem. in Supp. at 4-5.) Hernandez also points out that this court applied a base level of 27 to the racketeering offense of his co-defendant, Eduardo. (*Id.* at 2; Def.'s Reply [11] at 2-7; *see* Tr. of Sentencing Proceedings as to Eduardo Hernandez [830] at 15:7-23.) Hernandez may well be correct that the court could have applied a base level of 33 in Eduardo's case, too. The day after Hernandez was sentenced, the Seventh Circuit returned to this issue and reiterated its holding in *Garcia*. Noting that "the Latin Kings' constitution and the rules of [defendant's] chapter expressly contemplated violence, including homicide," the court held that "[m]urder was therefore a foreseeable part of [defendant's] agreement with gang members." *United States v. Porraz*, 943 F.3d 1099, 1103 (7th Cir. 2019). That remained true despite "no evidence that [defendant] pulled a trigger." *Id.* Hernandez—and Eduardo, for that matter—committed acts that constitute conspiracy to commit murder, and thus a base level of 33 is appropriate.

That the court failed (perhaps mistakenly) to adopt the base level of 33 for Hernandez's co-defendant does not satisfy the court that Hernandez was the victim of ineffective assistance of counsel. Determining the appropriate base offense level is only the first step in sentencing, and Hernandez's situation was very different from that of Eduardo. As alleged in the indictment, Hernandez "was at times the Chief Enforcer of the older circle of the Maywood section of the Latin Kings." (Indictment ¶ 6c.) Eduardo "was at times a soldier in the younger circle." (*Id.* ¶ 6o.) Eduardo was a gang member for six years, most of them teenaged years, and withdrew from gang membership even before being arrested. He held no leadership position—unlike Hernandez, a 17-year member whose leadership role gave him substantial authority to direct others to engage in violence. The court may have erred in its guideline calculation for a co-

6

defendant, but the lower sentence the court ultimately imposed on a co-defendant does not establish that Hernandez's attorney was ineffective.

## II.    Ineffective Assistance of Counsel: Pleading Possession of a Firearm

Hernandez next argues that his original counsel "provided ineffective assistance at the plea stage by advising [Hernandez] to plead to being a felon in possession without explaining how [he] possessed the weapon." (Mot. at 5.) Hernandez maintains he "never had physical possession" of the gun, and thus he did not think he could have "possessed it" as stated in his original plea declaration. Hernandez argues that this misunderstanding led him to write the August 31, 2017 letter to the court "questioning some point he doesn't understand." (*Id.* at 6.) That letter, and the subsequent hearing, were the focus of the Government's argument that Hernandez had obstructed the administration of justice and had not demonstrated acceptance of responsibility. Hernandez argues that his misunderstanding—allegedly the fault of his counsel—caused him prejudice, in that he "should not be subject to an obstruction enhancement and should not lose [his] timely acceptance of responsibility." (*Id.*)

As the Government points out, Hernandez's argument that he was prejudiced by these events is factually incorrect. At sentencing, Hernandez's counsel argued the possession of the firearm issue was simply a misunderstanding, not obstruction. This court agreed and granted the three-point reduction.[3] Hernandez did not "lose" the credit for timely acceptance and cannot begin to establish prejudice under *Strickland*.

Hernandez also appears to argue that his counsel failed to inform him of the meaning of "constructive possession," and that he therefore cannot be guilty of being a felon in possession because the law requires that he "knowingly" violate 18 U.S.C. § 922(g). (*See* Mem. in Supp. at 5-7.) Hernandez is incorrect. The Supreme Court held in *Rehaif v. United States*, 139 S. Ct.

---

[3]     The two points added for obstruction of justice were not relevant to Hernandez's sentence, because they were added to the felon in possession count, which had a lower offense level than the RICO offense. (*See* Govt.'s Resp. at 22.)

2191, 2194 (2019) that "[t]o convict a defendant," the Government had to "show that the defendant knew he possessed a firearm and also that he knew he had the relevant status [such as being a felon] when he possessed it." Possession, as this court reminded Hernandez, includes conduct beyond physically holding a firearm. The Seventh Circuit explained that "[c]onstructive possession exists when, although an individual does not have immediate, physical control of the object, he knowingly has the power and intention at a given time to exercise dominion and control over the object." *United States v. Harris*, 587 F.3d 861, 866 (7th Cir. 2009) (internal quotation marks omitted). Thus, the relevant evidence and admission is that Hernandez knew he had the power and intention to exercise dominion and control over the firearm; his purported lack of understanding regarding a legal term does not affect his culpability under *Rehaif* or § 922(g).

## III.    AUUW Conviction Used to Increase Criminal History Points

Finally, Hernandez argues that because *People v. Mosley*, 2015 IL 115872, ¶ 25, 33 N.E.3d 137, 150-51 (2015) held that AUUW convictions under 720 ILCS 5/24-1.6(a)(2), (a)(3)(A) are unconstitutional, such convictions could not be used to calculate Hernandez's criminal history score. (Mot. at 7.) Hernandez acknowledges that he is "uncertain which past convictions have been used to calculate [his] criminal history," but he brings this ground of his motion "in the event" such an AUUW conviction was used in his case. (*Id.*)

As an initial matter, this argument is procedurally defaulted. A § 2255 motion is "neither a recapitulation of nor a substitute for a direct appeal." *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992). Thus, "constitutional errors not raised on direct appeal may not be raised in a § 2255 motion unless the defendant can demonstrate either: (1) both good cause for his failure to raise the claims on direct appeal and actual prejudice from the failure to raise those claims, or (2) that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice." *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996). Appeal was unnecessary for Hernandez's two ineffective assistance of counsel grounds. *Id.* at 1178 ("This circuit, as well as many of our sister circuits, has held that most claims of ineffective assistance

of trial counsel are properly raised for the first time in a § 2255 motion rather than on direct appeal.") But Hernandez's third ground, which does not involve allegations of ineffective assistance of counsel, must ordinarily be appealed. And Hernandez has not argued for an exception to the appeal requirement; he does not provide any explanation at all for the failure to raise this issue in an appeal, nor does he state how this court's refusal to hear the claim is a miscarriage of justice.[4]

In any event, the ground is meritless. The Government points out that Hernandez was not convicted of an AUUW offense that *Mosley* held unconstitutional. (Govt. Resp. at 31.) While there are two weapons offenses listed in the PSR (PSR ¶¶ 92, 94), neither are violations of the statutory sections ruled unconstitutional by *Mosley*. (Govt. Resp. at 32.) And even if they were, removing them would have no effect on Hernandez's criminal history score and sentence. Those two offenses accounted for two of ten possible points under Guideline § 4A1.1(c), and that guideline section only allows "up to a total of 4 points." Thus, even removing the weapons-related points, Hernandez still ends up with the maximum four points under § 4A1.1(c). And since none of the other points assessed to Hernandez are even remotely connected to AUUW offenses, he still ends up with a total criminal history score of 10 and a criminal history category of V. (PSR ¶¶ 114-16.)

## IV.    Certificate of Appealability

To receive a Certificate of Appealability, Hernandez must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" exists only where "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Resendez v. Knight*, 653 F.3d 445, 446 (7th Cir. 2011)

---

[4]    As the Government points out, *Mosley* was decided nearly five years prior to the sentencing in this case, which would have posed a challenge to any good cause argument Hernandez might have made. (Govt. Resp. at 31.)

(quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The claims Hernandez brings do not merit

further proceedings; the court's ruling is not one that reasonable jurists would find debatable. The

court declines to issues a Certificate of Appealability.

## **CONCLUSION**

Mario Hernandez's § 2255 motion [1] is denied and the court declines to issue a Certificate

of Appealability. The Clerk is directed to enter judgment in favor of the United States.

ENTER:

Dated: February 14, 2022

_____
REBECCA R. PALLMEYER
United States District Judge